625 So.2d 4 (1993)
TRANSPORTES AEREOS NACIONALES, S.A., a foreign corporation and Servicio Aereo De Honduras, S.A., a foreign corporation, Appellants,
v.
Tania Flores DE BRENES, individually and as Executor, Administrator, or Personal Representative of the Estate of Erick Antonio Brenes, Decedent, for herself and on behalf of the Decedent's survivors, and Claudia Crow, for hHerself and as Executor, Administrator or Personal Representative of the Estates of Alfonso G. Wong-Valle and Maria Wong-Valle, Deceased, et al., Appellees.
Nos. 92-925, 92-1408.
District Court of Appeal of Florida, Third District.
March 9, 1993.
Rehearing Denied November 3, 1993.
*5 Condon & Forsyth, Desmond T. Barry, Jr., Marilyn P. O'Mara, New York City, Steel Hector & Davis, Thomas Scott, Adalberto Jordan, Thornton, David, Murray, Richard & Davis and John M. Murray, Miami, for appellants.
Speiser, Krause, Madole & Mendelsohn, Mata, San Antonio, TX, Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel D. Eaton, Miami, for appellees.
Before SCHWARTZ, C.J., and FERGUSON and LEVY, JJ.
FERGUSON, Judge.
Transportes Aereos Nacionales, S.A., and Servicio Aereo de Honduras (collectively TAN-SAHSA), the defendants in two wrongful death actions, appeal from judgments awarding moral damages for non-economic harm.
In October 1989, a Boeing 727 operated by TAN-SAHSA crashed in Tegucigalpa, Honduras causing the death of 127 passengers and four crew members. The captain and first officer of the craft survived the accident. They were acquitted of criminal charges filed by Honduran authorities.[1] Subsequently, thirty-four wrongful death actions were filed against TAN-SAHSA in the circuit court for Dade County. For pre-trial purposes, the trial court consolidated thirty-one of the thirty-four cases. The parties stipulated that the actions were governed by Nicaraguan law and that TAN-SAHSA would not contest liability for compensatory damages recoverable under Nicaraguan law. The only question in dispute was whether Nicaraguan law permits the recovery of moral damages in a wrongful death case.
Following an evidentiary hearing, the court ruled that both economic and moral damages could be claimed by the decedents' family members. In the Brenes action, the parties stipulated to $1,000,000 in compensatory damages and, if the trial court's interpretation of moral damages was affirmed on appeal, $1,500,000 in moral damages. In the Crow case, the jury awarded economic damages of $144,000 and moral damages of $1,494,000.

Standard of Review
A trial court's determination of foreign law is treated as a ruling on a question of law over which an appellate court exercises plenary review. Kingston v. Quimby, 80 So.2d 455 (Fla. 1955). See also Aboandandolo v. Vonella, 88 So.2d 282 (1956); C.T. Drechsler, Annotation, Uniform Judicial Notice of Foreign Law Act, 23 A.L.R.2d 1437, 1439 (1952) (determination of foreign law is a question of law under Uniform Act, changing common law which considered it an issue of fact).
Under section 90.202(4), Florida Statutes (1991), a court may take judicial notice of foreign law. The Law Revision Council Note to that section states that a Florida court complies with section 90.202 by taking judicial notice in a manner similar to that made under the federal rules. The note then quotes Federal Rule of Civil Procedure 44.1, *6 which provides that a court's determination of foreign law "shall be treated as a ruling on a question of law." Moreover, in reviewing, de novo, the trial court's determination, appellate courts are not limited to matters raised by the parties, but are encouraged to take an active role in ascertaining foreign law. See § 90.204(2), Fla. Stat. (1991); Twohy v. First Nat'l Bank of Chicago, 758 F.2d 1185, 1192 (7th Cir.1985) ("trial and appellate courts are urged to research and analyze foreign law independently.")[2]

Nicaraguan Law
Nicaragua is a civil-law jurisdiction. It is axiomatic that in civil-law jurisdictions, law-making is exclusively the function of the legislature. See, e.g., John Henry Merryman, The Civil Law Tradition 23-24 (1969) (only the legislature can make law); Albert Tate, Jr., Civilian Methodology in Louisiana, 44 Tul.L.Rev. 673 (1970) (the basis of all law is legislative). Statutes, enacted by the legislature, are the primary recognized source of law in civil-law tradition. Wilson, Criminal Justice in Revolutionary Nicaragua, 23 Miami Inter-American L.Rev. 269, 281-82 (1992) ("The study of civil law is the study of codes. No other source of law  judicial decisions, treatises, regulations, custom, or practice  carries the central significance of the code as the correct, organized, coordinated, unified expression of governing principles.").
Consistent with this principle of legislative supremacy, Nicaraguan law provides that all rights, duties, and liabilities must be expressly created by the legislature. Article 1835 of the Civil Code of Nicaragua states: "The obligations derived from the law are not presumed. Claims can only be based on those obligations expressly provided for in this Code or in the Special laws... ." Accordingly, moral damages cannot be awarded in a wrongful death case under Nicaraguan law unless such damages are expressly authorized by the legislature.
Because the flight crew was acquitted of all criminal charges in connection with the plane crash, plaintiffs' claims are governed by the civil code. No provision of the civil code provides for the recovery of moral damages. Appellees rely on Article 2509, the basic civil-code provision dealing with the indemnification of damages and losses. According to Article 2509, "[e]veryone who by intentional misconduct, fault, negligence or imprudence, or by a malicious act causes injury to another is obligated to repair it along with the harms." It is the appellees' contention that because Article 2509 does not differentiate between compensatory and moral damages, moral damages are implicitly recoverable. That argument, however, ignores the civil-code prohibition against presuming legal obligations not expressly set forth under the code. Article 2509 does not mention moral damages; it provides only for the compensation of pecuniary loss. In fact, the only civil-code definition of "injury" and "harm" is found in Article 1865 which states "[i]ndemnification of damages includes not only the amount of the loss which has been suffered, but also that of the creditor's loss of profits... ."
Furthermore, the legislative history of Article 2509 suggests that at the time of its enactment, the legislature did not intend to provide for an award of moral damages. The historical note to Article 2509 states that the provision was derived from the Civil Code of Costa Rica, a jurisdiction that did not recognize moral damages. A. Brenes Cordoba, Tratado De Los Obligaciones 79 (1977 reprint of 1923 ed.). Although the Nicaraguan legislature enacted a new penal code in 1974 which expressly provided for an award of moral damages after a criminal conviction, Article 2509, the Civil Code, was not amended to provide recovery for such damages.
In view of our holding that no provision of Nicaraguan law permits the recovery of moral damages in these wrongful death cases, those portions of the judgments entered in *7 Brenes and Crow that award moral damages cannot stand.
Reversed and remanded.
NOTES
[1] According to the appellants, in Latin America the police routinely arrest and file criminal charges against persons involved in fatal accidents. Such charges, however, rarely result in convictions and sentences. See K. Karst, Latin American Legal Institutions: Problems for Comparative Study 256, 260-261 (1966) (discussion on the conviction rate in the criminal tribunal for homicide or negligently caused injuries).
[2] Guelman v. De Guelman, 453 So.2d 1159 (Fla. 3d DCA 1984), relied upon by the appellees for the proposition that an interpretation of foreign law is an issue of fact, is neither a correct statement of the law nor applicable to the question presented in this case. In Guelman the correct interpretation to be given the foreign law was litigated as a question of fact. Here, the court was requested, before trial, to take judicial notice of, and to apply the Nicaraguan Code, as a matter of law.