DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CAROLE ANN BERG,**
Appellant,

v.

**ROY TIMOTHY YOUNG,**
Appellee.

No. 4D13-2364

[September 2, 2015]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; David E. French, Judge; L.T. Case No. 502010DR009452 SB FY.

Nancy W. Gregoire of Kirschbaum, Birnbaum, Lippman & Gregoire, PLLC, Fort Lauderdale, and Howard S. Friedman of Fischler & Friedman, P.A., Fort Lauderdale, for appellant.

Andrew A. Harris of Burlington & Rockenbach, P.A., West Palm Beach, and Curtis L. Witters of Glickman, Witters & Marell, P.A., West Palm Beach, for appellee.

LEVINE, J.

The main issue for our consideration is the interpretation of the prenuptial agreement, specifically whether the wife was entitled to an equitable distribution of the husband's interest in a company acquired from his father during the marriage. Ultimately, the trial court found that the husband's interest was a separate, non-marital asset and not subject to equitable distribution. Further, the trial court ordered each party to bear their own attorneys' fees. The wife appeals the trial court's ruling, and the husband cross-appeals the trial court's denial of attorneys' fees. We find that although the trial court erred in its interpretation of the agreement, the final judgment may be affirmed because the trial court did not award the wife any interest in the company. However, we reverse and remand on the issue of fees.

Roy Timothy Young, the husband, worked at Delray Motors, Inc., an automobile dealership. The husband's father owned 40% of the dealership

and created a trust for the benefit of the husband that held a 30% interest in the dealership. Prior to the parties' marriage in 1996, they executed a prenuptial agreement (the "agreement"). In 2002, the husband purchased half of his father's interest in Delray Motors (the "Delray 20%"). In 2010, Carole Ann Berg, the wife, petitioned for dissolution, challenging the validity of the agreement and claiming an equitable distribution interest in the Delray 20%. The husband asserted the agreement was valid and enforceable, and that under the agreement, the wife waived any interest in the Delray 20%.

The initial trial judge bifurcated the proceedings, such that the first part would address the validity and the construction of the agreement, and the second part would address all other issues. After the conclusion of the first part, the initial judge entered an order upholding the agreement and interpreting some of the agreement's terms. Both parties moved for an award of prevailing party attorneys' fees and for rehearing. On rehearing, the initial judge entered an order clarifying that the wife had a "right to equitable distribution of the increase in the value or enhancement in value of all separate assets which have appreciated due to the active marital efforts of the husband," which "may include premarital assets or assets acquired during the marriage solely titled in the Husband's name." The initial judge denied both parties' requests for fees, finding the husband prevailed on validity and the wife prevailed on interpretation.

A successor trial judge presided over the second part. Testimony revealed that the husband's income consisted of his salary, commissions, and trust stock distributions, all from Delray Motors. These incomes were dependent on the dealership's success. The wife also worked at the dealership on a salary basis during most of the parties' marriage and received rent from tenants in a duplex she owned. Pursuant to the agreement, the parties deposited their respective earnings into separate accounts, not a joint account and never into the other spouse's account.

In 2002, the husband obtained a loan to purchase the Delray 20% for $1,650,000.00. The purchase price was determined based on a business valuation report created by a firm hired by the husband to appraise the fair market value of the dealership. The husband paid the loan off from his separate accounts. In 2004, Delray Motors paid off a loan to purchase the land upon which the dealership is located. The loan was paid with Delray Motors monies, including retained earnings not distributed to the husband and/or other shareholders. The dealership did not purchase any more land and did not make any improvements to buildings or build any new buildings between 2002 and 2010. The husband testified that Delray

2

Motors had been "[s]ignificantly less" profitable since 2002, as sales had decreased while expenses and costs had increased.

A personal property appraiser hired by the wife testified that the tangible assets of Delray Motors were worth over $2 million. A real estate appraiser hired by the wife testified that the value of the Delray Motors real property, including the buildings and improvements thereon, was more than $17 million. A CPA hired by the wife testified that there was a $1,850,000.00 increase in the value of the Delray 20% based on his 2010 valuation of Delray Motors, which he conceded used a different method than the firm that created the 2002 valuation report.

An automobile dealership financial advisor hired by the husband testified that the dealership owned too much land, and claimed no one would purchase the dealership for the approximately $19 million value given by the wife's experts, because the gross profit was not there to warrant the investment. The advisor appraised Delray Motors's 2010 value to be $2,750,000.00. By this determination, the husband's interest in the Delray 20% decreased in value. The husband's CPA also testified that the value in Delray Motors as well as the husband's Delray 20% interest actually decreased in value from 2002 to 2010, based on the CPA's independent valuations and appraisals.

The wife also requested additional fees pursuant to section 61.16, Florida Statutes. Prior to the final hearing, the trial court had awarded to the wife temporary attorneys' fees totaling $51,000.00, litigation costs totaling $5,000, and temporary accounting fees totaling $27,250.00. At trial, the wife's financial affidavit prepared at the commencement of the action was introduced into evidence. The affidavit showed a monthly gross income of $3,527.67. The wife did not produce an updated financial affidavit, but testified that she was unemployed, that her only income sources were unemployment and rent from the duplex she owned, and that she had no other assets. The husband's amended financial affidavits introduced at trial showed two different monthly gross income amounts, one for $27,504.00 and one for $38,117.00. No additional testimony or evidence was presented regarding either of the parties' need and/or ability to pay attorneys' fees and costs. The wife's CPA testified that he was owed approximately $135,000.00. The husband's CPA testified that the wife's records demonstrated that she paid approximately $125,273.00 in attorneys' and accountant fees, and that this total did not include the $93,000.00 in payments the husband made directly. No other testimony regarding the fees for either party was presented to the trial court.

The successor trial judge subsequently entered the final judgment of dissolution of marriage. The successor judge found that "[v]irtually all of the assets of the parties are titled solely in the name of either the Husband or the Wife, including the Delray Motors stock," and under the agreement, "assets which are titled in the name of one of the parties are the separate asset of the party holding title." However, the successor judge ruled that "the Wife did not waive her right to equitable distribution of the increase in the value or enhancement in value of all separate assets which have appreciated due to the active marital efforts of the Husband." This ruling was consistent with the initial trial judge's conclusion in the orders on the agreement from the first part of the proceedings.

The trial court then made certain findings of fact regarding the Delray 20%, including that "[a]ll the payments made by the Husband upon the Bank of America loan taken to acquire his stock of Delray Motors, Inc. were [] paid with his separate non-marital funds." Thus, contrary to the wife's position, the trial court found the case of *Kaaa v. Kaaa*, 58 So. 3d 867 (Fla. 2010), "not applicable to the facts of this action" because no marital assets were used to pay for the Delray 20%. Further, the trial court found that appreciation of the Delray 20%, if any, "is a result of the passive increase in the value of the underlying land and buildings at Delray Motors and not the result of the active marital efforts of the Husband." Accordingly, the trial court found that the Delray 20% "is the separate non-marital property of the Husband and there is no appreciation in the value of that stock which would be subject to equitable distribution" and denied the wife's request for equitable distribution of the Delray 20%. The trial court also ordered each party to bear their own attorneys' fees without any further explanation.

"A trial court's interpretation of a prenuptial agreement is reviewed de novo, as such agreements are governed by the law of contracts." *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. 1st DCA 2009). "The standard of review of a trial court's determination of equitable distribution is abuse of discretion. However, '[a] trial court's legal conclusion that an asset is marital or nonmarital is subject to de novo review.'" *Bell v. Bell*, 68 So. 3d 321, 328 (Fla. 4th DCA 2011) (citations omitted). Likewise, "[t]he standard of review of a trial court's application and interpretation of Florida law is de novo." *Anthony v. Gary J. Rotella & Assocs., P.A.*, 906 So. 2d 1205, 1207 (Fla. 4th DCA 2005).

The wife argues that the trial court erred in finding there was no active appreciation in the Delray 20% and in denying her request for equitable

distribution of said appreciation.[1] The husband responds that the wife waived any interest in the Delray 20% under the agreement, and it was a non-marital asset not subject to equitable distribution. Alternatively, the husband argues that the trial court correctly found there was no active appreciation in the value of the Delray 20%.

Initially, we consider whether the trial court correctly interpreted the agreement. In *Kaaa*, the Florida Supreme Court held that "the passive appreciation of a nonmarital asset, such as [a] marital home, is properly considered a marital asset where marital funds or the efforts of either party contributed to the appreciation." 58 So. 3d at 870. Accordingly, this court has held that "[w]here a prenuptial agreement does not address the right to enhanced value of a non-marital asset, that value is subject to equitable distribution." *Weymouth v. Weymouth*, 87 So. 3d 30, 34 (Fla. 4th DCA 2012).

In *Weymouth*, the wife agreed in a prenuptial agreement to "remise, release and quit claim all right, title and interest she might have . . . to any property owned [by the husband] *prior* to marriage . . . ." *Id.* at 32 (emphasis added). Conversely, the prenuptial provided that "all 'property acquired by either of them *during* the marriage . . .' is marital property." *Id.* (emphasis added). This court affirmed the trial court's determination "that the passive appreciation of the [marital] home [which the husband owned prior to the marriage] was marital property subject to equitable distribution" because the "boilerplate reference to a 'quit claim' . . . referred to the wife's waiving her interest in the property *at the time the agreement was entered into*" and "does not mean that the agreement governed enhancement value." *Id.* at 35.

---

[1] The wife also argues that the successor trial judge erred in not applying the initial trial judge's findings of fact and conclusions of law regarding the agreement because "a successor judge may not review, modify, or reverse, upon the merits, on the same facts, the *final* orders of his predecessor, absent mistake or fraud." *Burdick v. Burdick*, 399 So. 2d 410, 412-13 (Fla. 3d DCA 1981) (emphasis added). However, this argument is without merit for multiple reasons. First, it appears that the successor trial judge did, in fact, adopt the same interpretation of the agreement as the initial trial judge. Second, even if the successor trial judge's interpretation was different, the initial trial judge's orders regarding the agreement were *interlocutory* in nature and subject to review by the successor judge. *See Sell v. Sell*, 870 So. 2d 833, 833-34 (Fla. 3d DCA 2003). Thus, the successor trial judge was "free to revisit during the proceedings or at the final hearing" the findings of fact and conclusions of law made by the initial trial judge in the "order approving the prenuptial agreement" because said order was non-final. *Id.* at 834 (Cope, J., concurring).

In *Hahamovitch v. Hahamovitch*, 133 So. 3d 1008 (Fla. 4th DCA 2014), the prenuptial agreement contained multiple releases and waivers of interest by the wife and specifically addressed property acquired during the marriage. Specifically, the parties agreed to "keep and retain sole ownership, control, enjoyment and power of disposition with respect to *all property, real, personal or mixed, now owned or hereby acquired by each of them respectively,* free and clear of any claim by the other. . . ." *Id.* at 1012. Further, "each party agrees that *neither will ever claim any interest in the other's property and that the property of every kind, nature and description which either one has on the date of the marriage* will remain the respective separate property of each after said marriage . . . ." *Id.* Finally, a "title presumption" paragraph provided that if both parties' names were on the title, each party would have equal interest in said property; but "*[i]f [the husband] purchases, acquires, or otherwise obtains, property in his own name, then [the husband] shall be the sole owner of same.*" *Id.*

This court concluded "that under the plain language of the prenuptial agreement, the wife waived and released claims to property or assets owned by the husband at the time of the agreement, or acquired in his own name thereafter, including any enhancement in the value of such property." *Id.* at 1015. "The language of the agreement was broad enough to waive the wife's right to any asset titled in the husband's name that was acquired during the marriage or that appreciated in value due to marital income or efforts during the marriage." *Id.* This court explained:

> [T]he title presumption provision in paragraph 17 of the prenuptial agreement . . . when read together with the other provisions of the prenuptial agreement, is sufficient to waive future enhancement of non-marital property, even if it is due to marital earnings or labor. To hold otherwise would read the title presumption provision out of the agreement. If the prenuptial agreement is to effectively shield the husband's assets from the wife's claims, it must also include any appreciation in value.

*Id.* at 1015-16. This court also distinguished *Weymouth* because the prenuptial there "did not address the future acquisition of property," and "specifically provided that property acquired by either spouse during the marriage . . . was marital property." *Id.* at 1016.

In the instant case, the parties' agreement provides that "any and all real, personal, intangible, mixed, or other property owned by either party prior to the marriage, shall be and remain hereafter the separate property

6

of such party, including other property purchased with the proceeds thereon and increases in value during the marriage or changes in form." The parties agreed to "establish and maintain accounting procedures and records and bank accounts to preserve the separate character of their separate funds" and "not to commingle joint property with separate property." Further, the wife agreed to waive "every interest, claim or demand of whatever kind or description, in law or in equity, that may accrue to her . . . in the event of separation or dissolution proceedings," including "any right to any special equity, equitable distribution, or any other interest in any property of Husband of any kind whatsoever." Finally, another paragraph contains a "title presumption" provision that provides that "any and all real, personal, intangible, mixed, or other property acquired during the marriage in the name of one party alone shall be and remain the separate property of the party in whose name title is taken," and that "[e]ach party waives any claim of a special equity, equitable distribution, or any other claim against any such asset."

The provisions of the instant agreement and the prenuptial in *Hahamovitch* are strikingly similar. Specifically, both agreements contain a "title presumption" provision, a waiver to any interest in separate property owned by the other party prior to the marriage, and a waiver to any interest in property acquired by the other party and titled solely in that party's name during the marriage. *See* 133 So. 3d at 1012. Thus, as in *Hahamovitch*, the instant agreement's title presumption provision "when read together with the other provisions of the prenuptial agreement," including those related to property acquired during the marriage, "is sufficient to waive future enhancement of non-marital property, even if it is due to marital earnings or labor." *Id.* at 1015. The trial court's interpretation to the contrary inappropriately reads those provisions "out of the agreement." *Id.* at 1016.

Even though the trial court's interpretation of the agreement was erroneous, the trial court's conclusion that the appreciation in the Delray 20%, if any at all, was passive and not subject to equitable distribution, was correct and is supported by competent, substantial evidence.[2] Thus,

---

[2] Because this court also affirms the trial court's final judgment on this alternative basis, there is no need to certify the same question raised in *Hahamovitch* and currently pending before the Florida Supreme Court. *See* 133 So. 3d at 1017 ("Where a prenuptial agreement provides that neither spouse will ever claim any interest in the other's property, states that each spouse shall be the sole owner of property purchased or acquired in his or her name, and contains language purporting to waive and release all rights and claims that a spouse may be entitled to as a result of the marriage, do such provisions serve to

the wife's argument that the trial court erred in failing to apply a *Kaaa* analysis and equitably distribute the Delray 20% is without merit.

In *Kaaa*, the Florida Supreme Court outlined a "fact-intensive" method "a trial court should employ as it determines whether a nonowner spouse is entitled to a share of the passive appreciation and calculates the proper allocation." 58 So. 3d at 872. The method includes valuating the asset, determining whether there has been appreciation in that value during the marriage, and whether such appreciation was the result of active marital efforts thereby subjecting the appreciation to be equitably distributed. *Id.*

Here, the trial court found that the husband's purchase of the Delray 20% was made "during the marriage of the parties with funds earned by the Husband and deposited in his separate bank account." Additionally, the trial court found that "any change in the value of the [Delray 20%] stock is a result of the passive increase in the value of the underlying land and buildings at Delray Motors and not the result of the active marital efforts of the Husband." These findings are supported by competent, substantial evidence in the record. The monies the husband used to pay off the loan that financed the purchase of the Delray 20% came from his separate checking account. That account, titled solely in his name, contained non-marital monies, pursuant to the agreement, consisting of the husband's trust distributions, salary, and commissions from Delray Motors. There was trial testimony that the portion of the business that the husband oversaw, new car sales, had decreased since 2002, when the husband purchased the Delray 20%. Additionally there was testimony and evidence that any increase in the value of the land the dealership owned was the result of market factors and not due to any improvement or enhancement through marital efforts of the husband.

The trial court was correct in concluding that the Delray 20% "is the separate non-marital property of the Husband and there is no appreciation in the value of that stock which would be subject to equitable distribution." *See Kaaa*, 58 So. 3d at 872 ("If a separate asset is unencumbered and no marital funds are used to finance its acquisition, improvement, or maintenance, no portion of its value should ordinarily be included in the marital estate, absent improvements effected by marital labor.") (citation omitted); *Anson v. Anson*, 772 So. 2d 52, 55 (Fla. 5th DCA 2000) ("Simply because a shareholder-spouse devotes work efforts to a corporation during

---

waive a spouse's right to any share of assets titled in the other spouse's name, even if those assets were acquired during the marriage due to the parties' marital efforts or appreciated in value during the marriage due to the parties' marital efforts?"); *Hahamovitch v. Hahamovitch*, 145 So. 3d 824 (Fla. 2014).

marriage should not transform the entire appreciation of the stock into a marital asset.").

In summary, the trial court erred in its interpretation of the agreement by finding that the wife did not waive, and was entitled to, interest in any value or appreciation of the Delray 20% by virtue of the husband's active marital efforts. However, in light of the fact that the trial court did not award the wife any interest in the Delray 20% upon finding it to be the husband's "separate, non-marital property" and finding that there was no appreciation in value of the Delray 20% subject to equitable distribution, the final judgment may be affirmed pursuant to the tipsy coachman doctrine because the trial court "reache[d] the right result, but for the wrong reasons." *Advanced Chiropractic & Rehab. Ctr. Corp. v. United Auto. Ins. Co.*, 103 So. 3d 866, 869 (Fla. 4th DCA 2012) (citation omitted).

Lastly, both parties appeal the trial court's denial of their fees requests. The wife argues that the trial court erred in not awarding her fees in light of the great disparity between the net worth of the parties. A trial court's ruling on attorneys' fees in family law actions is reviewed for an abuse of discretion. *See Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980). "Any determination regarding an appropriate award of attorney's fees in proceedings for dissolution of marriage, support, or child custody begins with section 61.16, Florida Statutes." *Rosen v. Rosen*, 696 So. 2d 697, 699 (Fla. 1997). "The purpose of this section is to ensure that both parties will have a similar ability to obtain competent legal counsel," and "assure that one party is not limited in the type of representation he or she would receive because that party's financial position is so inferior to that of the other party." *Id.* (citation omitted). "It *can* be an abuse of discretion to grant only a partial attorney's fee award where, on balance, there is a substantial disparity between the parties' incomes. But the trial court cannot award fees based *solely* on disparity of income." *Fichtel v. Fichtel*, 141 So. 3d 593, 596 (Fla. 4th DCA 2014) (citation omitted). Furthermore,

> [i]t is critical that the trial court makes "specific findings of fact—either at the hearing or in the written judgment—supporting its determination of entitlement to an award of attorney's fees and the factors that justify the specific amount awarded. . . . [V]ague findings present an obstacle to meaningful appellate review."

*Id.*

Here, the final judgment contains no findings of fact regarding the trial court's fees determination. Because the trial court "did not address the

9

substantial disparity between the parties' incomes or provide specific factual findings" regarding its determination of the parties' fees requests, this court is precluded from "any meaningful review of this issue." *Id.*

The husband argues the trial court erred in not awarding him prevailing party fees for the first part of the trial pursuant to the agreement. Contrary to the wife's argument, we find the husband's request for fees was preserved. The Florida Supreme Court has held that "prenuptial agreement provisions awarding attorney's fees and costs to the prevailing party in litigation regarding the validity and enforceability of a prenuptial agreement are enforceable." *Lashkajani v. Lashkajani*, 911 So. 2d 1154, 1160 (Fla. 2005). Any such provisions control the issue of fees in a dissolution case over the parameters of section 61.16, subject to the limitations of disclosure outlined in Florida case law. *See id.*

Here, the agreement provides that "[i]f either party brings an action or other proceeding to seeking to void this agreement, in whole or part, the party seeking to avoid the terms of this agreement shall be liable for all of the attorneys fees and costs incurred by the other party." The wife sought to void the agreement during the first part of the proceedings. The trial court upheld the agreement, but denied both parties' requests for prevailing party fees ruling that the husband prevailed on validity, but the wife prevailed on interpretation. The clear, unambiguous terms of the agreement do not provide for an award of fees to the party prevailing on the "interpretation" of the agreement. Thus, the husband, as the prevailing party in the wife's action "seeking to void this agreement" was entitled to an award of fees against the wife who was "the party seeking to avoid the terms of this agreement." Thus, the trial court erred in denying the husband's request for fees in the first part of the proceedings.

In summary, we reverse the trial court's rulings on both parties' requests for an award of attorneys' fees. We remand with directions that the trial court award the husband prevailing party fees for services in connection with the first part of the proceedings regarding the validity of the agreement. We also remand for the trial court to reconsider the wife's request for additional fees under section 61.16 and make findings of fact sufficient to permit review of the trial court's decision.

*Affirmed in part and reversed and remanded in part.*

STEVENSON and FORST, JJ., concur.

\*       \*       \*

*Not final until disposition of timely filed motion for rehearing.*