DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**YVES MOQUIN,**
Appellant,

v.

**SYLVIE BERGERON,**
Appellee.

No. 4D21-27

[May 11, 2022]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Scott Suskauer, Judge; L.T. Case No. 502019DR001854XXXXNB.

Robin Bresky and Randall Burks of Bresky Law, Boca Raton, for appellant.

Eddie Stephens and Gina M. Szapucki of Ward, Damon, Posner, Pheterson & Bleau, West Palm Beach, for appellee.

FORST, J.

Appellant Yves Moquin ("Former Husband") appeals from an order and a final judgment of dissolution of marriage that found the proceeds from the sale of two marital residences were subject to equitable distribution under Chapter 61, Florida Statutes (2019). On appeal, Former Husband principally argues the trial court erred in: (1) misinterpreting Quebec (Canada) law when considering his Quebecois prenuptial agreement with Appellee Sylvie Bergeron ("Former Wife"); (2) making—or failing to make—several findings under section 61.075; (3) finding Former Wife conditionally entitled to alimony and attorney's fees; and (4) failing to make sufficient findings as to the parties' then-minor child under section 61.13.

We agree with Former Husband that the trial court erred in applying Florida's equitable distribution statute when equitably distributing proceeds from the sale of two marital residences under section 61.075, despite the existence of a Quebecois prenuptial agreement that clearly and unambiguously stated *Quebec* law applied to the distribution of the couple's property. Accordingly, we reverse and remand with instructions

for the trial court to distribute the proceeds solely to Former Husband as his separate property.

We decline to disturb the trial court's findings with respect to alimony and attorney's fees. On remand, in light of the above-noted reversal of the distribution of proceeds issue, the trial court shall reconsider whether an award of alimony and/or attorney's fees to Former Wife is appropriate. Finally, because the parties' child is no longer a minor, any purported failure to make sufficient findings under section 61.13 is now moot. *See Gamache v. Gamache*, 14 So. 3d 1236, 1238 (Fla. 2d DCA 2009) (holding that in a marriage dissolution action, neither parent may take custody of a competent, legal adult).

## Background

Former Husband married Former Wife in Quebec on July 25, 1992. Before the parties were married, they signed a July 17, 1992 marriage contract ("the Marriage Contract"). The Marriage Contract provided as follows:[1]

> ARTICLE ONE
> The future spouses adopt the separate property regime, pursuant to the provisions of the Civil Code of the Province of Quebec.

> ARTICLE TWO
> The future spouses will cover the marital expenses in proportion to their respective possibilities.

Under the parties' election of the separate property regime, "each spouse ha[d] the administration, enjoyment and free disposal of all his or her property." Civil Code of Quebec, S.Q. 1991, c 64, art 486 (Can.). It was undisputed the parties maintained separate accounts and assets throughout their marriage.

In 2009, the parties—along with a daughter born in 2002—became permanent Florida residents. Former Husband purchased a family home in Ocean Ridge ("the Ocean Ridge Residence") using his separate assets. The family lived in the Ocean Ridge Residence until July 2017, when they moved into two neighboring Palm Beach Gardens condominium units

---

[1] While the Marriage Contract was drafted in French, the parties agreed to the translation quoted in this opinion.

2

(collectively, "the Palm Beach Gardens Condominium").[2]  The Palm Beach Gardens Condominium was titled solely in the name of Former Husband's trust, and Former Wife later acknowledged she had not contributed any monies to the purchase.

Subsequently, in early 2019, Former Wife filed a petition for dissolution of marriage and other relief.  Former Wife's petition requested: (1) a parenting plan including equal timesharing; (2) child support pursuant to section 61.30, Florida Statutes (2019); (3) equitable distribution of marital assets under section 61.075, Florida Statutes (2019); (4) "all forms of alimony including, but not limited to, temporary, permanent periodic, rehabilitative, durational, bridge-the-gap, and lump sum alimony;" and (5) "temporary and permanent exclusive use, possession, title, and occupancy of the marital home in Ocean Ridge . . . or the [Palm Beach Gardens Condominium] marital home . . . ."  Former Husband listed the Palm Beach Gardens Condominium for sale; he had earlier listed the Ocean Ridge Residence as well.[3]

In response to Former Wife's petition, Former Husband filed an amended answer and counterpetition.  In his amended answer, Former Husband denied the parties had "acquired various marital assets and incurred liabilities in various titles, jointly and singularly."  Moreover, Former Husband raised the parties' July 17, 1992 Marriage Contract as an affirmative defense, arguing the contract "should govern the identification and classification of all non-marital properties of the parties and the distribution of the marital assets . . . ."  Similarly, Former Husband's counterpetition requested his "separate property . . . be set aside and awarded solely to [him] pursuant to the terms of the Marriage Contract . . . ."

Former Wife filed an amended reply and answer to Former Husband's counterpetition.  In short, Former Wife denied the Marriage Contract controlled.  She asserted, because the parties were domiciled in Florida, Florida law—or more precisely, Chapter 61—applied to the distribution of the parties' assets.  In the alternative, Former Wife argued, even if the trial

---

[2] The parties present the neighboring condominium units as if they are a single marital home.  We therefore treat them as a single home.

[3] During the pendency of the divorce, Former Husband sold the Ocean Ridge Residence and the Palm Beach Gardens Condominium.  The parties entered two agreed orders concerning the proceeds from the sale of the properties, with each party obtaining a percentage of the proceeds and the remainder being placed into escrow.  The agreed orders were entered "without prejudice as to either part[y's] claims raised in their pleadings."

court opted to apply the Civil Code of Quebec, "the full Civil Code should apply—including Quebec's family patrimony law, which would dictate much the same result as Chapter 61."

Due to the parties' disagreement as to the proper law to apply, Former Husband filed a "Motion to Enforce and/or Interpret Choice of Law Provision in Parties' Marriage Contract" ("Motion to Enforce"). Former Husband requested the trial court "enforce the parties' Marriage Contract and apply the Civil Code of the Province of Quebec to determine the distribution of all property." Specifically, Former Husband alleged that under Article I of the Marriage Contract, the parties "adopted the Matrimonial Regime of Separation as to Property, as established by the Civil Code of the Province of Quebec." Pursuant to the separation as to property regime, Former Husband asserted "the parties agreed . . . all property would remain separate upon dissolution of the marriage, including property acquired during the marriage . . . [and] agreed to be governed by the Civil Code of the Province of Quebec, regardless of where they lived in the future."

Citing to Florida law establishing that a court is required to enforce a choice-of-law provision in a prenuptial agreement unless it contravenes public policy, Former Husband argued, because the Marriage Contract did not contravene public policy and because the parties "kept separate assets and continually maintained separate accounts throughout the course of their marriage," he should "be awarded all property in his name alone and/or in trust for his benefit," including the Ocean Ridge Residence and Palm Beach Gardens Condominium. Moreover, Former Husband contended that "for the Rules of Family Patrimony to apply, the parties **must** be domiciled in Quebec at the time of the dissolution of the marriage." (boldface in original).

While Former Wife had previously argued the family patrimony articles should apply if proceeding under Quebec law, Former Wife subsequently obtained an expert who opined the family patrimony articles would *not* apply based upon Article 3089 of the Civil Code of Quebec—which provides that the effects of marriage (which includes the family patrimony articles) are governed by the law of the domicile of the spouses. Consequently, the parties filed a Joint Pretrial Stipulation, agreeing "the Family Patrimony Articles of the Civil Code of Quebec do not apply to the partition of property for spouses who do not reside in Quebec at the time of dissolution of marriage" and the family patrimony articles did "not apply to the parties herein who have been residing in Florida since 2007." The parties also agreed the Marriage Contract was valid and enforceable and, upon moving

to Florida, Former Husband "acquired several pieces of real property, all of which were titled in his name or the Yves Moquin Revocable Trust."

Following the Joint Pretrial Stipulation, the parties filed competing memoranda concerning Former Husband's Motion to Enforce. Notwithstanding the mutually agreed upon inapplicability of the family patrimony articles, Former Wife pointed to Article 3089 of the Civil Code of Quebec to support her position that the portions of Florida law which approximate the family patrimony articles would apply. She argued "the Florida Court must look to Article 3089 of the Civil Code of Quebec and apply Florida law to determine how to divide the remaining effects of marriage."

At the hearing on Former Husband's Motion to Enforce, the parties' Quebecois experts testified, reiterating the positions contained within the parties' memoranda. Notably, however, Former Wife's expert testified that when analyzing Article 3089, "Florida has to decide if there are Effects of Marriage that govern these parties . . . [such as] 'imperative laws' . . . which apply to the parties, notwithstanding their matrimonial regime."

Thereafter, the trial court entered an Order on Former Husband's Motion to Enforce. The trial court found "no doubt that the provisions of the [Marriage Contract] must be interpreted under Quebec law." The trial court also took note of the parties' agreement that "the effects of marriage, along with the Family Patrimony [Articles], do not apply with full force since the parties no longer reside in Quebec."

While the trial court agreed that the family patrimony articles did not apply, the court stated the issue at hand was "whether Article 3089 authorizes . . . any court in a jurisdiction other than Quebec, to utilize its own laws—insofar as they are . . . reasonably similar—to protect the effects of marriage that are guaranteed by the Civil Code of Quebec and were plainly contemplated by the parties by signing a Marriage Contract and relying upon the laws of Quebec during the pendency of their marriage." Finding this was "precisely the purpose of Article 3089," and that Florida has provisions for the equitable distribution of property in Chapter 61 that "align[] with the Family Patrimony [Articles]," the trial court determined the proceeds from the sale of both the Ocean Ridge Residence and the Palm Beach Gardens Condominium were "Family Patrimony" subject to equitable distribution under Chapter 61.

The trial court subsequently conducted a non-jury trial on the petition and counterpetition. At trial, Former Wife testified she contributed nothing financially to the purchase, improvement, or maintenance of any

of the marital homes during the marriage. Also undisputed was testimony that the parties maintained separate assets, with Former Husband even needing at one point to borrow $170,000 from Former Wife.

Subsequently, the trial court entered a final judgment of dissolution of marriage. The final judgment stated "the only remaining issue for this Court to decide is how to equitably divide the net proceeds from the sale of the Ocean Ridge Residence and [Palm Beach Gardens] Condominium property pursuant to Chapter 61, Florida Statutes." With respect to alimony and attorney's fees and costs, although the court found Former Wife did not have a need for alimony or attorney's fees and costs, the trial court also found that lump sum alimony and attorney's fees and costs would have been appropriate had Former Husband prevailed on his arguments concerning the two marital residences.

**Analysis**

*A. Interpretation of Foreign Law*

On appeal, Former Husband argues the parties stipulated the Quebec family patrimony regime did not apply, and the trial court therefore erred in determining the Ocean Ridge Residence and Palm Beach Gardens Condominium were "Family Patrimony." Former Husband further argues the trial court misinterpreted Article 3089, as "[t]he real purpose of Article 3089 is to guide the courts *of Quebec* in whether to apply the law of a foreign state as 'the law of the domicile of the spouses' to determine what 'effects of marriage' are binding on divorcing spouses who have property in a foreign state but are *getting divorced in a Quebec court.*"

"A trial court's determination of foreign law is treated as a ruling on a question of law over which an appellate court exercises plenary [or *de novo*] review." *Transportes Aereos Nacionales, S.A. v. De Brenes*, 625 So. 2d 4, 5 (Fla. 3d DCA 1993). When reviewing *de novo* a trial court's application of foreign law, "appellate courts are not limited to matters raised by the parties, but are encouraged to take an active role in ascertaining foreign law." *Cohen v. Shushan*, 212 So. 3d 1113, 1117 (Fla. 2d DCA 2017) (quoting *Twohy v. First Nat'l Bank of Chi.*, 758 F.2d 1185, 1192 (7th Cir. 1985)). Similarly, "[a] trial court's interpretation of a prenuptial agreement is reviewed de novo, as such agreements are governed by the law of contracts." *Hahamovitch v. Hahamovitch*, 174 So. 3d 983, 986 (Fla. 2015).

A "forum court must initially apply its own conflict of law rule with respect to a contract in order to determine the law it must apply." *In re Est. of Nicole Santos*, 648 So. 2d 277, 280 (Fla. 4th DCA 1995). "In the

case of [a] contract, Florida follows the conflicts of laws rule that the United States Supreme Court established in *Scudder v. Union Nat'l Bank*, 91 U.S. 406 (1876), which holds, in cases where the place of making the contract and performing it are not the same, the laws of the place in which it was made shall govern matters of execution, interpretation and validity." *Id.* "Generally, Florida courts enforce contractual choice-of-law provisions unless enforcing the chosen forum's law would contravene strong Florida public policy." *Lamb v. Lamb*, 154 So. 3d 465, 467 (Fla. 5th DCA 2015).

This body of law applies to premarital agreements. *See id.*; *Gal v. Gal*, 243 So. 3d 466, 467 (Fla. 5th DCA 2018). Indeed, Chapter 61 has codified that "[a]ny attempt to apply the law of a foreign country is void if it contravenes the strong public policy of this state or if the law is unjust or unreasonable." § 61.0401(4), Fla. Stat. (2019). However, "[a] contract is not void, as against public policy, unless it is injurious to the interest of the public, or contravenes some established interest in society." *Harris v. Gonzalez*, 789 So. 2d 405, 409 (Fla. 4th DCA 2001) (alterations omitted) (quoting *Neiman v. Galloway*, 704 So. 2d 1131, 1132 (Fla. 4th DCA 1998)).

Here, Quebec law applies to the parties' Marriage Contract. Both parties acknowledge such, and the law supports applying Quebec law to the Marriage Contract due to its Quebecois origin. *See In re Est. of Nicole Santos*, 648 So. 2d at 280. Further, the application of Quebec law to the parties' marital property would not contravene public policy in Florida, or be injurious to the public's interest, as a prenuptial agreement is permissible under Florida law. *See Mulhern v. Mulhern*, 446 So. 2d 1124, 1126 (Fla. 4th DCA 1984) (stating that prenuptial agreements "should be construed and interpreted in the same manner as other contracts."). Thus, under a *de novo* standard of review, this Court must apply the laws of Quebec to determine whether the trial court reached the correct result in equating Chapter 61 with Quebec's family patrimony articles and utilizing the portions of Chapter 61 which purportedly approximate the family patrimony articles.

Quebec is a civil law jurisdiction. *Rolls Royce (Can.), Ltd. v. Cayman Airways, Ltd.*, 617 F. Supp. 17, 19 (S.D. Fla. 1985). "It is axiomatic that in civil-law jurisdictions, lawmaking is exclusively the function of the legislature." *Transportes Aereos Nacionales, S.A.*, 625 So. 2d at 6. Pursuant to Quebec statutory law, "[t]he regime of conventional separation as to property is established by a simple declaration to this effect in the marriage contract." Civil Code of Quebec, S.Q. 1991, c 64, art 485 (Can.). "Under the regime of separation as to property, each spouse has the administration, enjoyment and free disposal of all his or her property." Civil Code of Quebec, S.Q. 1991, c 64, art 486 (Can.).

In the instant case, regardless of whether the family patrimony articles would have applied, the parties specifically stipulated "the Family Patrimony Articles of the Civil Code of Quebec do not apply to the partition of property for spouses who do not reside in Quebec at the time of dissolution of marriage" and the family patrimony articles did "not apply to the parties herein who have been residing in Florida since 2007." In light of such stipulation, the parties' Marriage Contract—which stated the parties "adopt[ed] the separate property regime, pursuant to the provisions of the Civil Code of the Province of Quebec"—was controlling.

Thus, because there existed a valid and enforceable contract directing the parties to employ the laws of Quebec as those laws pertain to the parties' property at the time of separation, the trial court had no need to turn to Article 3089 of the Civil Code of Quebec.[4] Nor did the trial court have any need to approximate the effects of the family patrimony articles within Florida law.

Consequently, we conclude the trial court erred in equitably distributing the property under Chapter 61. Because the testimony was undisputed that Former Wife had not contributed any funds to the purchase, improvement, or maintenance of either marital home during the marriage, and because of the extensive testimony as to the parties' efforts in maintaining separate assets, we further conclude Former Husband is solely entitled to the proceeds from the sale of the Ocean Ridge Residence and Palm Beach Gardens Condominium.

### B. Conditional Alimony and Fees

Former Husband next argues the trial court erred when it misapprehended important trial testimony. Specifically, Former Husband contends the trial court erred in finding Former Wife "sacrificed" during the marriage and further erred in concluding Former Wife had a need for alimony, arguing the trial court's conditional award of alimony and attorney's fees is unwarranted.

"A trial court has broad discretion in determining and awarding alimony." *Stough v. Stough*, 18 So. 3d 601, 605 (Fla. 1st DCA 2009). Alimony awards are reviewed under an abuse of discretion standard of

---

[4] Article 3089 provides in relevant part: "The effects of marriage, particularly those which are binding on all spouses regardless of their matrimonial regime, are subject to the law of the domicile of the spouses." Civil Code of Quebec, S.Q. 1991, c 64, art 3089 (Can.).

review. *Jimenez v. Jimenez*, 211 So. 3d 76, 78 (Fla. 4th DCA 2017). An appellate court "will not reverse an alimony award if it is supported by competent, substantial evidence." *Kurtanovic v. Kurtanovic*, 248 So. 3d 247, 251 (Fla. 1st DCA 2018).

Similarly, "[a] trial court's ruling on attorneys' fees in family law actions is reviewed for an abuse of discretion." *Berg v. Young*, 175 So. 3d 863, 870 (Fla. 4th DCA 2015). "An award of attorney's fees requires competent and substantial evidence." *Brewer v. Solovsky*, 945 So. 2d 610, 611 (Fla. 4th DCA 2006).

"In determining whether to award alimony or maintenance, the court shall first make a specific factual determination as to whether either party has an actual need for alimony or maintenance and whether either party has the ability to pay alimony or maintenance." § 61.08(2), Fla. Stat. (2019). The court must "then examine all relevant economic factors, including but not limited to the . . . factors identified in the statute . . . ." *Gray v. Gray*, 103 So. 3d 962, 966 (Fla. 1st DCA 2012); *see also* § 61.08(2)(a)–(j), Fla. Stat. (2019) (containing said factors).

In granting lump sum alimony, the trial court "should be guided by all relevant circumstances to ensure 'equity and justice between the parties.'" *Canakaris v. Canakaris*, 382 So. 2d 1197, 1201 (Fla. 1980). "A judge may award lump sum alimony to ensure an equitable distribution of property acquired during the marriage, provided the evidence reflects (1) a justification for such lump sum payment and (2) financial ability of the other spouse to make such payment without substantially endangering his or her economic status." *Id.*

Here, the trial court acknowledged its required role in examining the factors under section 61.08. The trial court then went through factors (a) through (j), making written findings as to several of the factors. The court recognized: (1) the parties' 26-year marriage; (2) Former Wife's age at the time of final judgment; and (3) Former Wife's "significant contributions to the marriage," including her role in assisting the Husband's career and raising their child, and her role in managing entertainment to promote the Husband's career. Based on those factors, the trial court determined that if Former Husband had prevailed in his argument that the Ocean Ridge Residence and Palm Beach Gardens Condominium properties were his separate property, Former Wife "would have a need for alimony and the Husband would have the ability to pay."

We cannot say that the trial court's conditional award of lump sum alimony was an abuse of discretion, as the holding was supported by

competent, substantial evidence. Indeed, Former Wife testified that it was ultimately Former Husband's desire that she not work, that she was a full-time mother, and she no longer had the opportunity to get back into her prior line of work. Further, based on Former Husband's forensic accountant's testimony, the trial court found Former Wife's annual deficit was $45,252.00, or $3,771.00 per month. This amount was supported by an Adjusted Monthly Living Expenses Sheet.

"Any determination regarding an appropriate award of attorney's fees in proceedings for dissolution of marriage, support, or child custody begins with section 61.16, Florida Statutes." *Rosen v. Rosen*, 696 So. 2d 697, 699 (Fla. 1997). Under section 61.16(1), a trial court may order a party to pay reasonable attorney's fees after considering both parties' financial resources.

Here, the trial court found Former Husband would have had significantly more assets had he ultimately prevailed. As we now award Former Husband all proceeds from the sale of the two marital residences as his separate property, the trial court may award alimony and attorney's fees on remand, should it determine doing so is supported per *Rosen*.

**Conclusion**

The trial court erred in determining Chapter 61, Florida Statutes (2019), applied to the distribution of the parties' property at the time of dissolution, and therefore further erred in distributing the property under section 61.075. Accordingly, we reverse and remand with instructions for the trial court to award Former Husband proceeds from the sale of the Ocean Ridge Residence and Palm Beach Gardens Condominium as his separate property.

The trial court's findings concerning conditional entitlement to alimony and attorney's fees are supported by competent, substantial evidence. On remand, the trial court shall address whether awarding Former Wife some form(s) of alimony and attorney's fees is appropriate. When entering its final judgment, the trial court is reminded to ensure that the correct documents are attached.[5]

*Affirmed in part, reversed in part, and remanded with directions.*

---

[5] Despite awarding $1,657,376.35 to each party, the trial court attached the wrong schedule of assets and liabilities and failed to account for a prior $250,000 distribution to each party.

CIKLIN and GERBER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***